COURT OF APPEALS















COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL PASO, TEXAS

 

WEST TELEMARKETING
CORPORATION     )

OUTBOUND,                                                       )              
No.  08-05-00166-CV

                                                                              )

Appellant,                          )                    Appeal from the

                                                                              )

v.                                                                           )            
County Court at Law #7

                                                                              )

VICTORIA McCLURE,                                       )           
of El Paso County, Texas

                                                                              )

Appellee.                           )                 
(TC# 2003-1292)

                                                                              )

 

 

O
P I N I O N

 








West Telemarketing
Corporation Outbound (AWest@) challenges the trial court=s judgment entered after a jury trial
awarding Appellee, Victoria McClure, damages for employment
discrimination.  In seven issues, West
contends:  (1) the evidence was legally and
factually insufficient to support the jury=s
finding that a discriminatory purpose motivated West to terminate Appellee; (2)
the evidence was legally and factually insufficient to support the jury=s finding that a discriminatory purpose
motivated West to deny Appellee a promotion; (3) the trial court abused its
discretion in admitting evidence of stray racial remarks, allegations of
unrelated instances of racial discrimination, and hearsay testimony of
disparate treatment; (4) the evidence was legally and factually insufficient to
support the award of compensatory damages; (5) the evidence was legally and
factually insufficient to support an award for past and future lost wages; (6)
there is no evidence of malice; and (7) the trial court abused its discretion
in awarding attorney=s
fees.  We affirm in part and reverse in
part.

Victoria McClure
is an African American who began her career with West in November of 1997.  Originally, she was employed as a Amarketing representative@ (AMR@) in the El Paso telemarketing facility of West
Telemarketing Outbound Corporation.  The
position of MR for West primarily consisted of employees attempting to sell
various products or services over the telephone for companies which had
contracted with West for this service.

After working four
years as an MR with West, Appellee applied for a promotion as a Ateam training learder@ (ATTL@). 
After filling out the required paperwork and going through a formal
interview process, Appellee was hired as a TTL in March of 2002.  It is unclear from the record, but
approximately two months after being hired for the TTL position, Appellee
sought a promotion to a senior training leader position.

According to her
testimony, Appellee sought the position after being asked by the acting site
director for West, Chris Moore, if she would be interested in the job.  Appellee and Chris Moore approached Buck
Zengerle, a branch manager at West, inquiring about the possibility of being
considered for the position.  Mr.
Zengerle dissuaded Appellee from applying for the position by indicating that
she would not be considered for the promotion. 
Appellee never formally applied for the position of senior training
leader after her conversation with Buck Zengerle.  Another individual, Rusty Treharne, was
ultimately hired for the position of senior training leader.








By the end of May,
2002, Appellee voluntarily resigned from the TTL position in order to return to
her former position as an MR.  Appellee
resigned as a result of financial difficulties because the position of MR paid
more than the TTL position due to the additional incentives.  Shortly after returning to her position as an
MR at West, Appellee handled a call for the AAT&T,
New York
Local inbound project.@  As a result of this call, Appellee was
terminated for making a Afraudulent
call.@  That is, logging a call as a sale when in
fact the customer did not want to purchase anything.

Appellee filed
suit against West alleging violations of the Texas Labor Code.  See Tex.Lab.Code
Ann. ''
21.051, 21.055 (Vernon 2006).  A jury
found that discrimination was a motivating factor in West=s decision not to promote Appellee and
her subsequent termination and that Appellee was entitled to recover actual and
exemplary damages.  The jury awarded
Appellee:  (1) back pay in the amount of
$72,500; (2) future lost wages and employment benefits in the amount of $50,000;
(3) past compensatory damages of $150,000; and (4) exemplary damages in the
amount of $250,000.  The trial court
rendered judgment on the verdict and awarded Appellee $72,500 in back pay,
$50,000 in future lost wages and benefits, and $150,000 in past compensatory
damages, plus prejudgment interest in the amount of approximately $15,422.  The trial court reduced the exemplary damages
award to $150,000 and also awarded Appellee attorney=s
fees of $278,400, legal assistant costs of $2,925, and ordinary costs of $907.








A Ano evidence@
or legal insufficiency point is a question of law which challenges the legal
sufficiency of the evidence to support a particular fact finding.  In re Estate of Livingston,
999 S.W.2d 874, 879 (Tex.App.‑-El Paso 1999, no pet.).  When the party without the burden of proof
suffers an unfavorable finding, the challenge on appeal is one of A>no
evidence to support the finding.=@ 
Id.  Consequently, to address West=s legal sufficiency/no‑evidence
challenge, we review the evidence in the light most favorable to the verdict,
disregarding all contrary evidence that a reasonable jury could have
disbelieved.  City of Keller
v. Wilson, 168 S.W.3d 802, 812 (Tex. 2005).

When the evidence
offered to prove a vital fact is so weak as to do no more than create a mere
surmise or suspicion of its existence, the evidence is no more than a scintilla
and, in legal effect, is no evidence.  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex.
2004), quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).  However, if the evidence supplies some
reasonable basis for differing conclusions by reasonable minds as to the
existence of a vital fact, then there is legally sufficient evidence.  King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 751 (Tex.
2003).  Put another way, if there is more
than a scintilla of evidence to support the finding, then there is legally
sufficient evidence.  See Continental
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996).

In reviewing the
factual sufficiency challenges to the jury=s
findings, we must consider all of the evidence and determine whether the
evidence in support of the findings is so weak as to be clearly wrong and
manifestly unjust or whether the findings are so against the great weight and
preponderance of the evidence as to be clearly wrong and manifestly
unjust.  Dow Chemical Company v.
Francis, 46 S.W.3d 237, 242 (Tex.
2001).








Chapter 21 of the
Labor Code provides that it is unlawful for an employer to discriminate against
an employee with respect to compensation or the terms, conditions, or
privileges of employment because of race, color, disability, religion, sex,
national origin, or age.  Tex.Lab.Code Ann. ' 21.051.  The Texas Legislature modeled Chapter 21 of
the Texas Labor Code after federal law for the express purpose of carrying out
the policies of Title VII of the Civil Rights Act of 1964 and its subsequent
amendments.  Tex.Lab.Code Ann. at '
21.001(1); see Soto v. El Paso Natural Gas Co., 942 S.W.2d 671,
677 (Tex.App.-‑El Paso 1997, writ denied).  Consequently, when reviewing an issue under
Chapter 21, we may look at cases involving the state statute as well as cases
interpreting the analogous federal provisions in resolving these claims.  See Quantum Chemical Corp. v.
Toennies, 47 S.W.3d 473, 476 (Tex.
2001); Elgaghil v. Tarrant County Junior College, 45 S.W.3d 133, 139
(Tex.App.‑-Fort Worth 2000, pet. denied).

Under Chapter 21,
if a plaintiff claims that an adverse employment decision was taken against her
based on race, as here, then she must establish that she:  (1) is a member of a protected class; (2)
suffered an adverse employment action; and (3) nonprotected class employees
were not treated similarly.  Jones v.
Jefferson County, 15 S.W.3d 206, 209 (Tex.App.‑-Texarkana 2000, pet.
denied).  In a race discrimination case
under the TCHRA, it is the employee=s
burden to prove race was Aa
motivating factor@ in the
employer=s
decision to terminate.  Wal-Mart
Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003).








When
discrimination cases have not been fully tried on the merits, we apply the
burden-shifting analysis established by the United States Supreme Court.  Wal-Mart Stores, Inc., 121 S.W.3d at
739.  However, when a discrimination case
has been fully tried on the merits, our inquiry does not focus on the
burden-shifting analysis.  Id.  A>We need not parse the evidence into
discrete segments corresponding to a prima facie, an articulation of a
legitimate, nondiscriminatory reason for the employer=s
decision, and a showing of pretext.=@ 
Rutherford v. Harris County, Tex.,
197 F.3d 173, 181 (5th Cir. 1999). 
Rather, we only determine whether or not there is sufficient evidence to
support the jury=s
ultimate findings.  Brown v. Kinney
Shoe Corp., 237 F.3d 556, 565 (5th Cir. 2001); Rubinstein v. Adm'rs of
Tulane Educ. Fund, 218 F.3d 392, 402‑03 (5th Cir. 2000); Rutherford,
197 F.3d at 180-81; Wal-Mart Stores, Inc., 121 S.W.3d at 739.

Termination

West=s first issue attacks the legal and
factual sufficiency of the evidence supporting the jury=s
verdict that discrimination was a motivating factor in West=s decision to terminate Appellee.  In this case, we need not determine if
Appellee proved that race was a motivating factor in West=s decision to terminate her in light of
the charge actually submitted to the jury.[1]  The charge which was submitted reads:

QUESTION NUMBER ONE

 

Was race a
motivating factor in West Telemarketing Corporation Outbound=s decision to terminate Victoria
McClure=s
employment or deny her a promotion?

 

A >motivating factor= in an employment decision is a reason
for making the decision at the time it was made.  There may be more than one motivating factor
for an employment decision.

 

A fact may be
established by direct evidence or by circumstantial evidence or both.  A fact is established by direct evidence when
proved by documentary evidence or by witnesses who saw the act done or heard
the words spoken.  A fact is established
by circumstantial evidence when it may be fairly and reasonably inferred from
other facts proved.

 

You are instructed
that a plaintiff is not required to produce direct evidence of an unlawful motive.  Discrimination, if it exists, is a fact which
is rarely admitted, but is a fact which you may infer from the existence of
other facts.

 








If the Plaintiff
disproves the reasons offered by Defendant by a preponderance of the evidence,
you may presume that the employer was motivated by race discrimination.

 

Although this charge may not be
accurate regarding the presumption of discrimination, when we review the legal
sufficiency of the evidence, our starting point is the charge which was actually
submitted to the jury.  Osterberg v.
Peca, 12 S.W.3d 31, 55 (Tex.
2000); AAA Office Coffee Serv., Inc. v. Hansen, No. 01‑03‑00984‑CV,
2005 WL 2470666, *10 (Tex.App.-‑Houston [1st Dist.] Oct. 6, 2005, no
pet.)(reviewing sufficiency points in light of the Amotivating
factor@ language
of the jury charge as submitted without objection rather than a Abut for@
standard for claim of retaliation).

We note that
although West objected to question one at trial, the objection lodged argued
that the charge was a comment on the weight of the evidence.  West did not object that the charge was
incorrect or misstated the law nor did West raise this issue on appeal.[2]  At trial, counsel for West actually agreed
that the charge was a correct summary of the law.  During oral argument, counsel for West took
the position that we should always conduct our sufficiency review according to
a correct statement of the law rather than the charge as submitted to the jury
when there is any objection, even if the objection is incorrect or not
specific.  We disagree.








In order for this
Court to measure the sufficiency of the evidence against the charge the trial
court should have submitted, West was required to object to the instruction
stating with particularity the reasons therefore.  See Tex.R.Civ.P.
274; St. Joseph Hosp. v. Wolff, 94
S.W.3d 513, 530 (Tex.
2002).  In St. Joseph Hosp., the
appellant hospital St. Joseph
specifically objected that the charge improperly defined an element of joint
enterprise and tendered an instruction which tracked the language used in the
Restatement of Torts.  Id. at 525.  The Court wrote that A[b]ecause
the trial court submitted an erroneous definition of joint enterprise over a
proper objection, we measure the legal sufficiency of the evidence supporting
the jury=s finding
of joint enterprise against the Restatement=s
definition of joint enterprise . . . .@  St.
 Joseph Hosp., 94 S.W.3d at 530.

West argues that A[t]he question is not whether West=s stated reason for termination (the
fradulent call) was false, but whether McClure met her burden to prove that
race was a motivating factor in the decisions.@  We again disagree.  We think it clear that in order to measure
the legal sufficiency of the evidence against the charge a court should have
submitted, a party must specifically point out why the objected-to instruction
or definition is incorrect.  The question
for our consideration, in light of the charge submitted to the jury, is whether
Appellee introduced legally and factually sufficient evidence to show that West=s legitimate, nondiscriminatory reason
for her termination was false.  This is
because the charge allowed the jury to presume the employer was motivated by
discrimination if Appellee disproved West=s
stated reason for her termination.








During the trial
on the merits, Appellee testified that on June 14, 2002, she was told by
William Moreno, the production manager, to report to Wesley Neitzel=s office.  When Appellee did so, she was given the ACall Quality Performance Report
(Verification)@ and the APerformance Improvement Notice@ indicating that she would be
terminated.  Ms. McClure testified that
she responded that she did not Abelieve
I made a fraudulent sale.@  Appellee testified that during the
conversation, Wesley Neitzel stated that he had Abeen
holding on to [the notice] because I 
needed to talk to Buck.  I didn=t think you made a fraudulent sale
either.@  Appellee stated that Mr. Neitzel told her
that Ahe
listened to the tape@
and Atold
[her] to go to Margie Marquez=
office.@  Appellee testified that while in Mr. Neitzel=s office, William Moreno made the
statement that AI don=t know why they came up with this shit
in trying to fire you.@  Appellee stated that rather than sign the CQ
report or the Performance Improvement Notice, as is West=s
policy, William Moreno Awalked
out with [her].@

Appellee also
testified that the attorney for West indicated that she had Aslammed@
a customer.  According to Appellee, Aslamming@
a customer consists of calling customers who subscribe to other phone service
providers and switching them without their permission.  Appellee testified that it would be
impossible to Aslam@ a customer on a new install, because
they were calling to create a new telephone number.  Appellee also stated that based on her
experience and knowledge of West=s
policy, West determines a fraudulent sale from the West computer system, not from
a recording of the call.

Appellee testified
that she cancelled the order on the West LOS system.  Further, Appellee stated that in the West RCAM system, she noted that the order had been
cancelled.  She also stated that she had
placed the notes in the RCAM system on June 5, 2002, the day of the sale.  Appellee also testified that she did not know
what happened to the notes that she placed in the system on June 5, 2002, but
guessed that Asomebody
deleted it.@

What is most
telling are the events following the termination.  Appellee appealed the termination decision to
Margie Marquez pursuant to West policy. 
At some point during the process, Margie Marquez received an e-mail from
William Moreno, Production Manager, on Thursday, June 20, 2002, stating:

Margie:

 








I went through LOS and RCAM and found
some information that might be helpful to you. 
LOS had the order canceled but RCAM had notes on the 14 of June
stating that the customer wanted to cancel the order but the btn was not able
to be canceled.  I also looked up other
dates and there were no notes.  The id
used to make notes on June 14 was S8IMFHM this RCAM ID belongs to Victoria
McClure.  There were no notes on June 5,
which is the day of the sale.  If you
have any questions please call me at 0325. 
[Emphasis added].

 

Ms. McClure testified that she was
terminated on June 14, 2002.  She also
testified that she appealed the process. 
After two days, she called Margie Marquez to determine the status of her
appeal.  Ms. McClure stated that Ms.
Marquez informed her that she would make her decision in six days.  Ms. McClure testified that Ms. Marquez called
her at the end of the sixth day, informed her Athe
decision stands,@ and hung
up the phone.  Even after receiving the
e-mail, which apparently indicated that Appellee did not make a fraudulent
call, Ms. Marquez decided not to reverse the decision to terminate
Appellee.  In fact, the employee
relations training coordinator who replaced Ms. Marquez testified that she
could not explain why Ms. McClure would still be fired when the information
from the computer system showed that the order had in fact been cancelled.








Ultimately, the
evidence in this case consisted primarily of witness testimony.  The jury heard conflicting testimony on all
of the material issues at trial. 
Although West presented contradictory witness testimony to rebut almost
every significant aspect of Ms. McClure=s
testimony, it was the jury=s
responsibility to determine the credibility of the witnesses and to choose
which portions of testimony to believe or disbelieve, and ultimately to weigh
all of the evidence.  GTE Mobilnet of
S. Tex. Ltd. P'ship v. Pascouet, 61 S.W.3d 599, 615‑16 (Tex.App.‑-Houston
[14th Dist.] 2001, pet. denied).  We have
no authority to re-evaluate the witnesses=
credibility or substitute our judgment for that of the jury.  Maritime Overseas Corp. v. Ellis, 971
S.W.2d 402, 407 (Tex.
1998).  This is true even when the
evidence would clearly support a different result.  Id.;
see also Shear Cuts, Inc. v. Littlejohn, 141 S.W.3d 264, 271
(Tex.App.‑-Fort Worth 2004, no pet.)(because the evidence was a Aswearing match@
between the parties, the court would not reevaluate the weight and credibility
of the evidence and would defer to the trial court=s
role as the exclusive judge of the credibility of the witnesses); see also
Davis v. Fisk Elec. Co., 187 S.W.3d 570, 580 (Tex.App.‑-Houston [14th
Dist.] 2006, pet. filed)(concluding it was jury=s
role to determine version of facts to believe after hearing substantial and
conflicting evidence on every relevant fact in discrimination case).

After viewing the
evidence in the light most favorable to the verdict, we find that there was
legally sufficient evidence to support a finding by the jury that the
legitimate, nondiscriminatory reason proffered by West was false.  Concerning the factual sufficiency, we
conclude the evidence presented was not so contrary to the overwhelming weight
of the evidence as to be clearly wrong or unjust.  Accordingly, we hold that the evidence was
both legally and factually sufficient to support a jury=s
affirmative answer to question one.[3]  Issue One is overruled.

Award
of Back Pay and Future Lost Wages








In Issue Five,
West challenges the legal and factual sufficiency of the evidence supporting
the award of back pay and future lost wages. 
As it relates to the award of back pay, the trial court has discretion
to award back pay as equitable relief in a race discrimination lawsuit.  Tex.Lab.Code
Ann. '
21.258(b)(1).  The correct measure of
damages for lost wages is the amount of money the employee would have earned
had she not been terminated, less the sum she did earn after termination.  Tex.Lab.Code
Ann. '
21.258(c); Burlington Coat Factory Warehouse of El Paso, Inc. v. Flores,
951 S.W.2d 542, 547 (Tex.App.‑‑El Paso 1997, no writ).  In awarding back pay, the court must also
deduct any workers=
compensation benefits and unemployment compensation benefits.  Tex.Lab.Code
Ann. '
21.258(c).

West directs our
attention to First State Bank v. Keilman, 851 S.W.2d 914, 930
(Tex.App.--Austin 1993, writ denied), for the proposition that a jury cannot Aarbitrarily assess an amount neither
authorized nor supported by the evidence presented at trial.@ 
In Keilman, a bank charged unauthorized interest, the parties
presented competing calculations; the bank contended that it had charged
$169.92 in authorized interest, and the plaintiff contended that the bank had
charged $7,161.44 in unauthorized interest. 
Keilman, 851 S.W.2d at 930. 
The jury found that the bank had charged $360 in unauthorized interest.
Although the amount awarded by the jury was within the range between the
different interest figures presented by the parties, the evidence was factually
insufficient to support the award because there was inadequate support for a
theory that would have resulted in the figure returned by the jury.  The evidence supported a choice of one figure
or the other, not somewhere in the range between them.  Id.
at 931.








On the other hand,
where there is proof to support a range of damage options, the mere fact that
nothing in the record shows how the jury arrived at a specific amount is not
fatal to the verdict.  Mayberry v. Texas Dep=t of Agric., 948 S.W.2d 312, 317
(Tex.App.‑-Austin 1997, writ denied). 
In Mayberry, the Court concluded that some evidence supported a
jury verdict for back pay because the theory of the case provided for a range
of possible damage awards (rather than only a choice between two amounts)
depending on when the jury concluded the plaintiff should have been promoted,
and because the verdict was within the narrow range defined by competing extremes
posited by the parties.  Id. (award of
$1206 fell between $1028 and $1292).

In the instant
case, Appellee testified that prior to her termination, she resigned from the
position of TTL to return to her former position as an MR.  Appellee stated that she did this because MR=s make more money than TTL=s because of incentives and
overtime.  Evidence of Appellee=s weekly earnings while employed as an
MR in 2002 were introduced.  While the
amount earned for each individual pay period varied, there was some evidence
indicating that her gross weekly earnings could reach as high as $1,168
depending upon the number of regular hours that she worked, number of overtime
hours worked, incentives, premiums, and tenure pay.  The jury also heard testimony that West
provided insurance benefits to employees who worked over thirty hours a week.

Appellee was
terminated on June 14, 2002, and the matter went to trial on November 8, 2004,
a period of approximately 29 months (128 weeks).[4]  In terms of interim earnings, evidence was
introduced that Appellee earned approximately $8,415 in unemployment benefits
and approximately $12,360 in wages for a total of approximately $20,775.  No evidence was introduced as to the value of
any other benefits such as insurance.








The jury could
have based lost earnings on Appellee=s
highest weekly earnings statement.  This
would result in a figure as high as approximately $149,504 ($1,168 x 128
weeks).  Subtracting the interim benefits
from this figure results in a range from $0 to as high as $128,729 without
calculation of any other benefits.  The
jury awarded $72,500 for back pay.  The
jury has discretion to award damages as long as the damage award is within the
range of evidence presented at trial and a rational basis exists for its
calculation.  See Mayberry, 948
S.W.2d at 317.  Unlike Keilman,
the evidence of Appellee=s
lost wages did not support an either/or amount. 
The jury could have averaged her last six months of weekly pay stubs,
used either the highest or lowest pay stub to calculate potential earnings, or
used one or the other or an average of the previous two years of earnings.  The different ways in which the jury could
have calculated Appellee=s
lost earnings distinguish this case from the facts in Keilman.  We find the evidence both legally and
factually sufficient to support the award of back pay.

In regards to the
award of front pay, front pay is an equitable remedy intended to make a person
whole after suffering employment discrimination when reinstatement is not a
feasible option.  Wal‑Mart
Stores, Inc. v. Davis, 979 S.W.2d 30, 45 (Tex.App.--Austin 1998, pet.
denied).  Front pay is awarded to
compensate the plaintiff for future lost wages and benefits.  Giles v. Gen. Elec. Co., 245 F.3d 474, 489
n.27 (5th Cir. 2001).  Reinstatement is
generally preferable to an award of front pay, however, a court may award front
pay in lieu of reinstatement especially when reinstatement is not a feasible
option.  See Hansard v. Pepsi‑Cola
Metro. Bottling Co., Inc., 865 F.2d 1461, 1470 (5th Cir. 1989).  In its findings of fact and conclusions of
law, the trial court entered the following findings of fact:

The question of the amount of the
Plaintiff=s front
pay was submitted to the jury by agreement of the parties.

 

The Plaintiff requested reinstatement,
but Defendant opposed reinstatement of the Plaintiff.

 

Based on the Defendant=s opposition to reinstatement of the
Plaintiff, the Court finds that reinstatement of the Plaintiff is not feasible.

 








The amount of $50,000 would fairly,
reasonably and equitably compensate the Plaintiff for her front pay losses.

 

Appellee testified
that she had intended to continue working for West until her retirement around
the year 2036 had she not been fired. 
The jury was entitled to believe her. 
The record establishes that Appellee could have earned between
approximately $20,000 to $50,000 a year at the time of her termination
depending upon number of hours worked, overtime, bonuses, and incentives.  Her year 2000 W-2 indicated that she earned
approximately $20,000 in wages, tips, and other compensation.  Her year 2001 W-2 indicated that she earned
approximately $17,000.  Additionally, the
highest amount Appellee earned during the last six months of employment with
West for a pay period of one week was approximately $1,168.  We find that there is some evidence
supporting the jury=s award
of damages.  Further, in light of the
entire record, the jury=s
finding is not clearly wrong and unjust. 
Accordingly, there is both legally and factually sufficient evidence to
support the award of damages for front pay. 
Issue Five is overruled in its entirety.

Compensatory
Damages








In Issue Four,
West argues that the Aaward
of compensatory damages is not supported by the evidence.@ 
Jury question number three asked A[w]hat
sum of money, if any, if paid now in cash, would fairly and reasonably
compensate Victoria McClure for her damages, if any, that resulted from such
conduct?@  In the instructions accompanying this
question, the term ACompensatory
damages@ was
defined to include Aemotional
pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and
other nonpecuniary damages.@  The charge also defined AMental anguish.@  The jury was then asked to award a specific
amount of damages for ACompensatory
damages in the past.@  Specifically, West focuses on the mental
anguish component of the award.

In addressing
mental anguish, we are guided by the Texas Supreme Court=s
decision in Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d
607 (Tex. 1996).  In Saenz, the
Court reaffirmed Parkway Co. v. Woodruff, 901 S.W.2d 434 (Tex. 1995),
and found that mental anguish damages could not be awarded without either A>direct
evidence of the nature, duration, or severity of [plaintiffs=] anguish, thus establishing a
substantial disruption in the plaintiffs=
daily routine, or other evidence of a high degree of mental pain and distress= that is >more
than mere worry, anxiety, vexation, embarrassment, or anger.=@  Saenz, 925 S.W.2d at 614, citing
Parkway, 901 S.W.2d at 444; see also Worsham Steel Co. v. Arias, 831
S.W.2d 81, 85-6 (Tex.App.‑-El Paso 1992, no writ).  Additionally, there must be some evidence to
justify the amount actually awarded.  Saenz,
925 S.W.2d at 614.  While the court did
acknowledge that juries should be given some measure of discretion in finding
damages, it made clear that a jury=s
discretion was not unlimited.  See id.

In Saenz,
the only testimony regarding mental anguish was Saenz=s
testimony that she Aworried .
. . a lot@ about
her loss of income and her inability to pay future medical bills.  See Saenz, 925 S.W.2d at 614.  Unlike Saenz, in this case there is
ample evidence of mental anguish. 
Ms. McClure testified that when she was escorted out of the West
facility by security guards, she felt Adisgusted
and humiliated.@  She stated that Aeverybody
was whispering.  Everybody was talking .
. . .  It was very humiliating to
me.  It crushed me, actually.@ 
She stated that after she received notice that the termination decision
would stand from Ms. Marquez, she Acried
. . . .  Because [she] had put a lot into
that job.@








She testified that
the loss of her job led to her inability to support her family and she felt
like she had failed her children.  She
also stated that she became Adepressed@ and she did not accept calls from her
co-workers and did not allow visitors to her home.  She testified that her depression lasted Afor a while, because [she] went out
looking for a job.  And it was more
difficult than [she] thought.@  She stated that it took some time for her
unemployment hearing and she was behind on her bills and was going to lose her
home.  When asked how long she was
depressed, Ms. McClure stated that she was Astill
depressed over this situation@
which, by the time of trial, was over two years after the termination.

Ms. McClure also
testified that she had to Apawn@ personal items including her son=s necklace given to him by his deceased
father in order to Atry to
make it through.@  She stated that she had never seen a
psychiatrist or psychologist about her feelings of sadness or depression or
taken any medication but that she would cry and lay in her bed.  During trial, the following exchange
regarding an earlier deposition took place between counsel for West and Ms.
McClure:

Q:        This is page 89 of your depostion, and
this is where you and I discussed those issues. 
Now, starting at line 3, do you see where I asked you: What do you mean
when you say it hurts?

And then you
answered: You=re not
able to perform or function.  I don=t--

Oh, well, skip that.

Line 7: What do you
mean when you say you=re
not able to perform or function? 

And then your answer
was what?

 

A:         That I don=t
like where I=m
working.

 

Q:        No, I=m
sorry, ma=am.  I skipped down to the next question.  

 

A:         Where are you?

 

Q:        Starting on line 7.  Can you see that?  Do you see where I am, ma=am?

 








A:         Yes. 
It says: When you can=t
pay your bills and provide for your family and your kids, and you don=t know where the money is going to come
from the next day, your body breaks down.

 

Q:        Okay. 
That=s what
you and I were just talking about before, right?

 

A:         That=s
correct.

 

Q:        Now--and I asked you then:  Have you experienced that?

And do you see what
your answer is?

 

A:         Yes.

 

Q:        Line 13, it says: Yes.

And I say:  What do you mean your body breaks down?

And your answer is
what?

 

A:         When I -- where I just lay in bed and
cry and can=t move.

 

Q:        And I asked you:  When was the last time that happened to you?

 

A:         And I said: About a month ago.

 

Q:        Then I asked you:  How many times has that happened to you?

 

A:         And I said:  A lot.

 

Q:        Okay. 
And I asked you:  What do you mean
by a lot?

And what did you say?

 

A:         I started telling you that I got a
statement, basically being behind on my bankruptcy payment, and trying to catch
up with my house note, and my son was graduating.

 

Q:        Okay. 
And then I asked you: How many times has this happened to you, that you=ve laid in bed and couldn=t move@

 

A:         Where are you reading that, again?

 

Q:        I asked the last line on page 89, which
is: Okay.  How many times has this
happened to you, that you=ve
laid in bed and couldn=t
move?

Do you see that
question@

 

A:         And I said: At least 13 times, just
stressed out.








In reviewing only
the evidence and inferences that tend to support the jury=s findings, this Court concludes that
there was more than a scintilla of evidence for the jury to conclude that
Ms. McClure suffered compensable mental anguish or other non-pecuniary
losses.  There was evidence of the nature
and severity of her mental anguish, including testimony that Ms. McClure felt Ahumiliated,@
Acrushed,@
Adepressed,@
and that A[her]
body breaks down.@  Additionally, there was evidence that at
times Ms. McClure was confined to her bed and Acouldn=t move@
which would certainly interrupt her daily routine and render her unable to deal
with everyday activities.

Regarding the
factual sufficiency of the evidence, this Court has stated that for there to be
factually insufficient evidence of mental anguish, there should be Aevidence contrary to the jury=s finding, not just weak evidence
supporting it.@  America West Airlines, Inc. v. Tope,
935 S.W.2d 908, 916 (Tex.App.‑-El Paso 1996, writ dism=d as moot).  Although West did challenge portions of Ms.
McClure=s testimony
on cross-examination, there was no evidence presented which directly
contradicted her testimony on the nature and severity of her mental
anguish.  Therefore, we find that the
evidence supporting the award of compensatory damages was not so contrary to the
overwhelming weight of the evidence as to be clearly wrong or unjust.








Additionally, West
challenges the evidence supporting the amount awarded as compensatory
damages.  After hearing the evidence, the
jury awarded Ms. McClure $150,000 for ACompensatory
damages in the past.@  We note that Ms. McClure testified that her
depression continued after the termination and up until the time of trial, some
two years later.  After a review of the
evidence presented and considering the duration of Ms. McClure=s depression, we find that the evidence
in this case was sufficient to support the amount awarded as compensatory
damages and that the award is Afair
and reasonable.@  See Saenz, 925 S.W.2d at 614.  Consequently, Issue Four is overruled.

Exemplary
Damages Award

In Issue Six, West
challenges the sufficiency of the evidence to support the award of punitive
damages based on a finding of malice. 
Appellee responds that Abecause
Appellant does not challenge the finding of reckless indifference, its
challenge to the malice finding provides no basis for reversal.@ 
We disagree.  We begin our
analysis with the charge submitted to the jury. 
Osterberg, 12 S.W.3d at 55. 
Here, the jury charge defined Amalice@ as:

(a)        a specific intent by West Telemarketing
Corporation Outbound to cause substantial injury to Victoria McClure; or

 

(b)        an act or omission by West Telemarketing
Corporation Outbound,

 

(i)         which, when viewed objectively from the
standpoint of West Telemarketing Corporation Outbound at the time of its
occurrence, involved an extreme degree of risk, considering the probability and
magnitude of the potential harm to others; and

 

(ii)        of which West Telemarketing Corporation
Outbound had actual, subjective awareness of the risk involved, but
nevertheless proceeded with conscious indifference to the rights, safety, or
welfare of others.

 

By statute,
exemplary damages may only be awarded when there is a finding of malice, fraud,
or gross negligence.  See Tex.Civ.Prac.&Rem.Code Ann. ' 41.003(a)(Vernon Supp. 2006).  The Texas Labor Code allows recovery for
punitive damages when the Arespondent
engage[s] in a discriminatory practice with malice or with reckless
indifference to the state-protected rights of an aggrevied individual.@ 
See Tex.Lab.Code Ann.
' 21.2585(b).








Rather than
suggesting alternate grounds of recovery as Appellee argues, this portion of
the statute refers to the subjective knowledge of the employer that its actions
are in violation of the law.  Shear
Cuts, Inc., 141 S.W.3d at 272. 
Before imposition of punitive damages is warranted, an employer must
have acted either with malice (specific intent to harm), or with reckless
indifference to state-protected rights.  See
Kolstad v. Am. Dental Ass=n,
527 U.S. 526, 535, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999)(interpreting an
analogous provision in the context of Title VII).

By the charge
submitted to the jury, Amalice@ could have been predicated on a
finding that West had acted with either the specific intent to harm, or that
its actions were grossly negligent.  See
Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges:  Business, Consumer, Insurance, &
Employment PJC 110.31A (2003).  West
challenged the finding of Amalice.@ 
In the charge, as submitted, both Amalice@ and Agross
negligence@ are
defined as simply Amalice.@ 
The challenge to the finding of Amalice@ includes both grounds and West has
waived neither.  Accordingly, we will
consider whether there is legally sufficient evidence of Amalice@
as that term is defined in the charge.  Osterberg,
12 S.W.3d at 55; Ancira Enterprises, Inc. v. Fischer, 178 S.W.3d 82, 93
(Tex.App.‑-Austin 2005, no pet.).

The standard for
recovery of exemplary damages is by clear and convincing evidence.  Tex.Civ.Prac.&Rem.Code
Ann. '
41.003.  When we review the sufficiency
of the evidence of a finding that must be proven by clear and convincing
evidence, we must look at all the evidence in the light most favorable to the
finding to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its finding was true.  Southwestern Bell Telephone Co. v. Garza,
164 S.W.3d 607, 619 (Tex.
2004).








An award of
punitive damages must be supported by more than mere knowledge on the part of
the employer that its acts are discriminatory. 
Ancira Enterprises, Inc., 178 S.W.3d at 94, citing Kolstad,
527 U.S.
at 535, 119 S.Ct. at 2124; see also Shear Cuts, Inc., 141 S.W.3d at 272;
Shoreline, Inc. v. Hisel, 115 S.W.3d 21, 26 (Tex.App.‑-Corpus
Christi 2003, pet. denied).  To recover
punitive damages, Ms. McClure was required to introduce clear and convincing evidence
that West was aware that its actions were in violation of the law.  Ancira Enterprises, Inc., 178 S.W.3d
at 94.  Consequently, even if the
individuals responsible for terminating Ms. McClure had engaged in intentional
discrimination, this would not support an award of punitive damages unless
those actors were aware that their actions were in violation of the law.  Ancira Enterprises, Inc., 178 S.W.3d
at 94.  Therefore, under the jury charge
in this case, the punitive damages award must be supported by clear and
convincing evidence that West managerial employees knew that their conduct was
illegal and: (1) terminated Appellee with the intent to cause her injury; or
(2) were grossly negligent in doing so. 
Appellee can prove West=s
knowledge by either direct or circumstantial evidence.  Transportation Ins. Co. v. Moriel, 879
S.W.2d 10, 23 (Tex.
1994).








Here, Appellee has
failed to introduce clear and convincing evidence that West not only intended
to discriminate against her, but also knew that such discrimination was
in violation of the law.  There was
testimony concerning the policy of West regarding discriminatory
practices.  However, the individual who
testified about the West policy was not employed by West at the time the
alleged discrimination occurred.  There
was no evidence that the managerial employees of West responsible for the
termination of Ms. McClure possessed the requisite knowledge, training, or experience
in employment related issues to know that their actions were in violation of
any applicable law.  Ms. McClure
introduced no evidence that the individuals responsible for her termination had
attended any specialized training, were familiar with any specific policy of
West, or otherwise could be charged with knowledge that their actions were
unlawful.  We are not convinced that a
reasonable trier of fact could have formed a firm belief or conviction that
West knew that terminating Ms. McClure would violate the law.  Therefore, we sustain West=s Issue Six.  Accordingly, we reverse and render that Ms.
McClure take-nothing as to the award of exemplary damages.

Attorney=s Fees

In Issue Seven,
West argues the affidavit by trial counsel Enrique Chavez, Jr., submitted as
evidence of attorney=s
fees, should not have been considered by the trial court because his opinions
were not disclosed in a response to requests for disclosure.  Additionally, West is arguing that the trial
court erred in awarding attorney=s
fees because the amount was not warranted under the facts of this case.  West first objected to the affidavit of Mr.
Chavez by written motion on grounds that Ms. McClure had failed to supplement
disclosure.  The trial court denied West=s objection to the attorney=s fees testimony.  West re-urged its objection to the affidavit
for failure to supplement in a motion for new trial.  In the motion for new trial, West also
pointed out that it had objected to the attorney=s
fees in its earlier filed AObjection
to Attorney=s Fees
Testimony and Response to Plaintiff=s
Application for Attorney=s
Fees.@  The trial court subsequently denied the
motion on April 12, 2005.








We review a trial
court=s
decision relating to discovery matters for an abuse of discretion.  VingCard A.S. v. Merrimac Hospitality
Sys., Inc., 59 S.W.3d 847, 855 (Tex.App.-‑Fort Worth 2001, pet.
denied).  Whether to admit or exclude
evidence is a matter committed to the trial court=s
sound discretion.  See
City of Brownsville
v. Alvarado, 897 S.W.2d 750, 753 (Tex.
1995). A trial court abuses its discretion when it acts without reference to
any guiding rules or principles.  Ramirez
v. Ramirez, 873 S.W.2d 735, 738 (Tex.App.--El Paso 1994, no writ).

When a party fails
to supplement a discovery response in a timely manner, the evidence may be
excluded. Tex.R.Civ.P. 193.6(a); see
also Alvarado v. Farah Mfg. Co., Inc., 830 S.W.2d 911, 914 (Tex. 1992).  The remedy is mandatory and automatic unless
the court finds there was good cause for the failure to amend or supplement, or
the failure will not unfairly surprise or prejudice the other party.  Tex.R.Civ.P.
193.6(a).  The burden of establishing
good cause or lack of unfair surprise is on the party seeking to introduce the
evidence.  Tex.R.Civ.P. 193.6(b). 
The trial court has discretion to determine whether the offering party
has met its burden of showing good cause. 
The record must support a finding of good cause or lack of unfair
surprise.  Tex.R.Civ.P. 193.6(b). 
This Court will uphold the trial court=s
evidentiary ruling if there is any legitimate basis for it.  Owens‑Corning Fiberglas Corp. v.
Malone, 972 S.W.2d 35, 43 (Tex.
1998).

The request for disclosure at issue
specifically asks for the following information:

 

(f)         for any testifying expert or a
consulting exert [sic] whose mental impressions or opinions have been reviewed
by a testifying expert:

 

(1)        the expert=s
name, address and telephone number;

 

(2)        the subject matter on which the expert
will testify;

 

(3)        the general substance of the expert=s mental impressions an [sic] opinions
and a brief summary of the basis for them, or if the expert is not retained by,
employed by, or otherwise subject to the control of the responding party,
documents reflecting such information;

 








(4)        if the expert is retained by, employed
by, or otherwise subject to the control of the responding party;

 

(A)       all documents, tangible things, reports,
models, or data compilations that have been provided to, reviewed by, prepared
by or for the experts in anticipation of the expert=s
testimony; and

 

(B)       the expert=s
current resume and bibliography.

 

Rule 194.2(f) allows a party to
request disclosure of the general substance of the expert=s mental impressions and opinions and a
brief summary of the basis for them as required by the rules of civil
procedure.  Tex.R.Civ.P. 194.2(f). 
A party is under a continuing duty to amend or supplement the response
when they learn that a response is no longer Acomplete
and correct.@  Tex.R.Civ.P.
193.5(a).

In this case,
counsel for Ms. McClure included the name, position, address, and phone number
of all attorneys who might testify as experts Ato
their education, experience and training and as to the reasonableness and
necessity of attorneys [sic] fees in this case@
in its response.  Counsel for Ms. McClure
argues that West can not claim any unfair surprise from the failure to
supplement the responses to the request for disclosure.  First, Ms. McClure points out that the
original petition includes a request for attorney=s
fees and thus, West knew from receipt of the original petition that attorney=s fees would be in issue.  Additionally, Ms. McClure points out that
even if the responses were inadequate, West was on notice more that a year
before trial that her attorney would testify as an expert to reasonable and
necessary fees.  We agree with
Ms. McClure.  








The record before
us supports a finding that West was aware that the attorney for
Ms. McClure would testify as to attorney=s
fees.  Further, we are confident that the
failure to supplement would not result in any unfair surprise to West.  Implicit in the ruling of the trial court to
consider the affidavit of Ms. McClure and deny the motion to exclude of West is
a finding of either good cause, lack of unfair surprise, or undue
prejudice.  See e.g., Capital Metro.
Transp. Author./Cent. of Tenn.
Ry. and Navigation Co., Inc. v. Cent. of Tenn. Ry. and Navigation Co., Inc.,
114 S.W.3d 573, 583 (Tex.App.‑-Austin 2003, pet. denied); Bellino v.
Commission for Lawyer Discipline, 124 S.W.3d 380, 384 (Tex.App.‑-Dallas
2003, pet. denied); Parker Plaza West, Ltd. v. Boniuk Investments, Ltd.,
153 S.W.3d 729, 734 (Tex.App.‑-Dallas 2005, no pet).  Based on the record before us, we conclude
that the trial court did not abuse its discretion in impliedly finding that
West was not unfairly surprised by Ms. McClure=s
failure to disclose this additional information.  Accordingly, there was no error in the trial
court=s
decision to admit the affidavit.

Having found no
error in the admission of the affidavit of Ms. McClure=s
trial counsel, we next review the award of attorney=s
fees.  The only evidence that was
introduced by Ms. McClure on the issue of attorney=s
fees was the affidavit of trial counsel, Enrique Chavez, Jr.  West argues that the evidence is insufficient
because Ms. McClure did not submit to the trial court sufficiently detailed
records documenting the work performed and the hours expended.[5]  We disagree.








The amount of a
fee award rests in the sound discretion of the trial court, and we will not
reverse the trial court=s
judgment on appeal absent a clear abuse of discretion.  Cordova v. Southwestern Bell Yellow Pages,
Inc., 148 S.W.3d 441, 445-46 (Tex.App.‑-El Paso 2004, no pet.).  Even though the appropriate standard of
review is abuse of discretion, we may review an award for sufficiency of the
evidence.  Id. at 446.  This hybrid analysis requires a two‑pronged
inquiry.  Did the trial court have
sufficient information upon which to exercise discretion and, if so, did the
trial court err in the application of its discretion?  Id.  The traditional sufficiency review comes into
play with regard to the first question; however, our inquiry cannot stop there.
Id.  We must proceed to determine whether, based
on the elicited evidence, the trial court made a reasonable decision.  Cordova, 148 S.W.3d at 446.  Stated inversely, we must conclude that the
trial court=s
decision was neither arbitrary nor unreasonable.  Id.








Under the TCHRA, a
trial court may allow the prevailing party reasonable attorney=s fees as part of costs.  Tex.Lab.Code
Ann. '
21.259(a).  In this case, the trial court
used the Alodestar@ method to determine a reasonable
fee.  Under this method, the court
determines the hours reasonably spent on the matter and multiplies those hours
by an hourly rate.  Dillard Department
Stores, Inc. v. Gonzales, 72 S.W.3d 398, 412 (Tex.App.‑-El Paso 2002,
pet. denied).  The trial court then
adjusts the Alodestar@ figure by the factors listed in Johnson
v. Georgia Highway Express, Inc., 488 F.2d 714, 717‑19 (5th Cir.
1974).  Gonzales, 72 S.W.3d at
412.  The Johnson factors
include:  (1) the time and labor
required; (2) the novelty and difficulty of the questions; (3) the level of
skill required; (4) the effect on other employment by the attorney; (5) the
customary fee; (6) whether the fee is fixed or contingent; (7) time limitations
imposed by the client or the circumstances; (8) the amount involved and the
result obtained; (9) the experience, reputation, and ability of the attorney;
(10) the undesirability of the case; (11) the nature and length of the attorney=s relationship with the client; and
(12) awards in similar cases.  Gonzales,
72 S.W.3d at 412, citing Johnson, 488 F.2d at 717-19.  If some of these factors are accounted for in
the lodestar amount, they should not be considered when making
adjustments.  Gonzales, 72 S.W.3d
at 412.

In the affidavit
submitted to the court, counsel for Ms. McClure presented evidence on each of
the Johnson factors.  As one of
the designated experts on attorney=s
fees, trial counsel stated that he had represented Ms. McClure in this matter
for over two and one-half years.  He
indicated that $200 is within the range of fees Acustomarily
charged in El Paso
 County for similar legal
services, for lawyers with similar legal experience.@  Counsel stated that he had spent 575 total
hours in his representation of Ms. McClure and that his co-counsel had spent 76
hours.  Counsel further indicated that in
his opinion, Athe time
devoted was necessary to the successful result obtained and it was reasonable,
given the facts, circumstances and demands of the case.@  Counsel also testified that he performed all
of the work for this case himself and did not seek the assistance of co-counsel
until he was required to do so in preparing for the actual trial.  Counsel included a list of pleadings and
various discovery mechanisms which he was required to either review, draft, or
participate in such as, drafting pleadings, respond to requests for production,
requests for disclosure, and interrogatories, as well as take part in
depositions.








Additionally,
counsel stated that he was a solo practitioner and that by accepting this case,
he was precluded from taking other clients. 
Counsel indicated that he had accepted this case on a contingency basis
and that he had obtained an Aexcellent@ result in the matter.  Counsel included significant detail about his
experience in employment law and information concerning his reputation and
ability.  Counsel similarly provided
detail about his co-counsel.  Finally,
counsel included statements about the undesirability of the case, the
relatively few qualified attorneys in the area who could handle similar cases,
and awards in similar cases.

Generally, a court
does not abuse its discretion simply because the evidence presented on attorney=s fees is not provided in the form of
billing records or other similar evidence. 
See Air Routing Int=l
Corp. (Canada) v. Britannia Airways, Ltd., 150 S.W.3d 682, 692 (Tex.App.‑‑Houston
[14th Dist.] 2004, no pet.), citing Holmes v. Concord Homes, Ltd., 115
S.W.3d 310, 316‑17 (Tex.App.‑‑Texarkana 2003, no pet.); Schlager
v. Clements, 939 S.W.2d 183, 191‑93 (Tex.App.‑‑Houston
[14th Dist.] 1996, writ denied).  In
light of the affidavit testimony presented by the trial counsel of Ms. McClure
as to each of the Johnson factors, we find that the trial court had
sufficient information upon which to determine attorney=s
fees in the amount of $278,400 was reasonable. 
We therefore conclude that the trial court did not abuse its discretion
in making its finding.  Issue Seven is
overruled.

Accordingly, we
affirm that part of the judgment in which Ms. McClure prevailed on her claim
for employment discrimination under the TCHRA including:  (1) the attorney=s
fee award; (2) the past lost wages award; (3) the future lost wages award; and
(4) the award for past compensatory damages. 
We reverse and render Ms. McClure take-nothing in that part of the
judgment awarding exemplary damages.

 

 

October
19, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

Barajas, C.J. (Not Participating)











[1]
Because the charge allowed the jury to presume discrimination if Appellee
disproved West=s stated
reason for termination, we do not reach West=s
third issue of whether the trial court erred in admitting circumstantial
evidence of discrimination.





[2]West
did include in a footnote AWest
objected to that improper instruction.@  





[3]
Because the judgment can be supported by the discrimination finding, we need
not address the promotion claim in Issue Two.





[4]
West indicates in its brief that the period between termination and trial
included only eighteen months.





[5]
In a brief paragraph, West also argues that the trial court should have further
explained and articulated how each of the Johnson factors were
applied.  In response to a request for
findings of fact and conclusions of law, the trial court found that the Aattorney fees and costs stated in the
Court=s revised
judgment are reasonable and necessary attorney fees and costs . . . .@ 
West did not request any additional or amended findings and this point
is therefore waived.  See Heritage
Resources, Inc. v. Hill, 104 S.W.3d 612, 620 (Tex.App.--El Paso 2003, no
pet.).